[No. 581.  Decided January 31, 1889.]

## P. LAURENDEAU v. PETER FUGELLI.

PUBLIC LANDS — ENTRIES — REPLEVIN.

An entry upon inclosed and improved land occupied and claimed under a certificate from a railroad company is not authorized by 23 U. S. St. at Large, 321, forbidding the fencing of public land, or preventing settlement thereon, but the person so entering is a naked trespasser.

In replevin for hay which plaintiff claims by reason of his alleged ownership of the land on which it was grown, and of which defendant has possession, the title to the land may be inquired into.

*Appeal from District Court, Kittitas County.*

Replevin by P. Laurendeau against Peter Fugelli. Plaintiff appeals.

*Allen, Whitson & Gilliam,* for appellant.
*Daniel Gaby,* for appellee.

The opinion of the court was delivered by

ALLYN, J. — This action was brought by appellant in the district court of Kittitas county to recover possession of seventy-five tons of hay of the value of $500; the plaintiff

claiming to be the owner of the soil, and, by virtue of this, of the hay. It appears that prior to 1883 the land upon which this crop was grown had been contracted by the Northern Pacific Railroad Company to one Wilcox, who sold it to one Amlin. The latter, in 1883, conveyed it to appellant (plaintiff). The land was seeded to grass, fenced and otherwise improved. In May, 1885, appellee broke down a portion of the fence, entered upon the land, and took possession — presumably on a claim of pre-emption, although there is no evidence as to such claim. Appellant now sues for the hay cut in 1887, or its value, as stated. In the court below, upon the close of plaintiff's case, a motion being made for a nonsuit, the same was granted, and from this and the overruling of a motion for a new trial plaintiff appeals. It is urged by the appellee that this is, in fact, a trial of title to the land, and that this question cannot be considered in an action of replevin. Also, that the appellant was within the prohibition of the act of Congress forbidding the fencing of public lands, or preventing settlement thereon. 23 U. S. St. at Large, Feb. 25, 1885, p. 321. The contention of appellee that the title to realty should not be tried in a replevin suit is correct in the abstract; but the title may certainly be looked into to determine the rights of the parties, and incidentally tried in a transitory action when necessary to establish the title to personal property severed from the realty. Wells, Rep., §§ 79, 80. See, also, *Atherton v. Fowler*, 96 U. S. 513 — an action in replevin, in which the title to realty is practically determined — a case so like the one at bar that it will be referred to later *in extenso*.

In relation to the contention of appellee, viz., reliance upon the act of congress above referred to, our attention is called to a late decision from the department of the interior, dated October 2, 1888, reported in Copp's Land Owner, vol. 15, No. 15 (*Stoddard v. Neigel*), the syllabus of which is: "A settlement made without violence, within

the unlawful and unauthorized inclosure of another, is valid," etc.   The facts of that case would appear sufficient to sustain the conclusions arrived at; but it will not do to say broadly that parties may judge for themselves as to the lawful or unlawful inclosure of others, and enter such, with or without violence, and acquire rights.   The announcement of such a principle as this is sufficient to refute itself.   It is shocking to the moral sense, and would encourage trespass and violence, leading to the gravest of crimes.   As suggested, the facts of that case may have justified the decision which was arrived at, but such a rule, announced for general application, cannot now, and never will, be followed.   In any event, it is merely a ruling of the interior department, and is no precedent to control our judgment here.   As is well known from the circular of April 5, 1885, the entry, countenanced by *bona fide* settlers upon unlawfully inclosed lands, was where large areas of public and unoccupied lands had been inclosed without a shadow of claim or right by stockmen; and to place such persons and such cases outside of the general rule was necessary, right, and proper.   They were no more entitled to protection than any other offender against the law.   To invoke the act of 1885 as a license to opposing claimants, preëmptors, and the like, of a law unto themselves, that either may break down the inclosure of the other and lawfully enter, is to use a rule made for desperate cases, requiring desperate remedy, and in itself exceptional; to overturn the law; to bring chaos instead of social order; to make the court a useless formality, and the law an object of contempt.   This question has been passed upon in 96 U. S. 513-520, by Justice MILLER, in *Atherton v. Fowler*, a case of replevin for hay cut under circumstances quite similar to this.   The question of title was there looked into, as here, and the results of the cases are alike generally, as they are in the facts.   The learned judge, whose reputation is not limited by the boundaries of our own country, says,

36—1 WASH.

p. 516: " It is not to be presumed that congress intended, in the remote regions where these settlements are made, to invite forcible invasion of the premises of another in order to confer the gratuitous right of preference of purchase on the invaders. In the parts of the country where these pre-ëmptions are usually made, the protection of the law to rights of person and property is generally but imperfect under the best of circumstances. It cannot, therefore, be believed, without the strongest evidence, that congress has extended a standing invitation to the strong, the daring, and the unscrupulous to dispossess by force the weak and the timid from actual improvements on the public land, in order that the intentional trespasser may secure by these means the preferred right to buy the land of the government."

In the case at bar appellant was in peaceable possession by purchase from the holder of a certificate from the railroad company. He and his grantors had for some years plowed and seeded it to grass, inclosed it with a fence, and made other improvements thereon. To allow such an occupation and possession to be disturbed by one who breaks down a fence, and violently seizes it, we cannot consent to. In the case in 96 U. S., from which we have just quoted, the learned judge, under almost exactly parallel facts, says: " Unless some reason is shown, these were the persons (those who had settled on it, improved and cultivated it) entitled to make preëmption, and no one else. But suppose they were not. Does the policy of the preëmption law authorize a stranger to thrust these men out of their houses, seize their improvements, and settle exactly where they were settled, and by these acts acquire the initiatory right of preëmption? The generosity by which congress gave the settler the right of preëmption was not intended to give him the benefit of another man's labor, and authorize him to turn that man and his family out of their home. It did not propose to give its bounty to set-

tlements obtained by violence at the expense of others.
The right to make a settlement was to be exercised on un-
settled land ; to make improvements on unimproved land.
To erect a dwelling-house did not mean to seize some other
man's dwelling. It had reference to vacant land, to unim-
proved land; and it would have shocked the moral sense of
the men who passed these laws, if they had supposed that
they had extended an invitation to the pioneer population
to acquire inchoate rights to the public lands by trespass,
by violence, by robbery, by acts leading to homicides, and
other crimes of less moral turpitude." We quoted largely
from Justice MILLER, as that case is a clear precedent for
this, and also because it is based on a similar state of facts.
The powerful and convincing reasoning of the learned jus-
tice, breathing as it does a just indignation against outrage
and oppression, thoroughly commends itself to us, and, as
concluded in that case, so in this.    It follows that the de-
fendant could not have made any lawful entry on the land
where the hay was cut. No law exists which gave him any
right to such entry.    He was a naked trespasser, making
an unwarranted entry upon the inclosure of another ; an
inclosure and occupation of years, upon which time, labor,
and money had been expended. In such wrongful attempt
to seize the fruits of another man's labors there could be no
*bona fide* claim of right whatever. The action of the court
below in granting a nonsuit to the defendant was error, and
the judgment must therefore be reversed.

BURKE, C. J., and LANGFORD, J., concur.