[No.·1338.]

D. A. GONDER, APPELLANT, *v.* H. S. MILLER, RESPONDENT.

PUBLIC LANDS—EJECTMENT—PRIMA FACIE CASE—IMPROPER NONSUIT.
—Appellant, in an action of ejectment, sued to recover possession of
an unsurveyed tract of government land and introduced evidence
tending to prove his prior possession, an ouster, and rested his case.
Respondent moved for a nonsuit upon the ground that appellant had
not acquired, nor shown any intention of acquiring the government
title to the land, which motion was granted by the court. *Held*, that
appellant's evidence established a *prima facie* case, and there being
no evidence that respondent's rights were better than appellants, the
nonsuit was improperly granted.

APPEAL from the District Court of the State of Nevada, White
Pine county.

*T. H. Wells*, District Judge.

The facts sufficiently appear in the opinion.

*Rives & Judge*, for Appellant.

I.   No claim is made that defendant had acquired any right
to the possession of the land in question.. Nor has it been

shown that he was qualified to enter upon or acquire the title to the same from the government of the United States or the state of Nevada, or that he is a citizen of the United States. So far as the record shows, he was a mere naked trespasser, and plaintiff having been in the undisputed prior possession of the land, inclosed and cultivated the same and made improvements thereon, he is entitled to the possession thereof as against defendant. (*Staininger* v. *Andrews*, 4 Nev. 59; *Yount* v. *Howell*, 14 Cal. 468; *Morton* v. *Folger*, 15 Cal. 275; *Payne* v. *Treadwell*, 16 Cal. 220; *Grady* v. *Early*, 18 Cal. 108; *Hubbard* v. *Barry*, 21 Cal. 321; *Toland* v. *Mandell*, 38 Cal. 30; *Hughes* v. *Hazard*, 42 Cal. 149.)

II. Respondent in support of his position, relies upon the act of congress of Febuary 25, 1885, entitled " An act to prevent the unlawful occupation of public lands." Section 6 of said act reads as follows : " That where the unlawful enclosure includes less than one hundred and sixty acres of land, no suit shall be brought under the provisions of this act without authority from the secretary of the interior." In construing this section of the act, the secretary of the interior has decided that the act excepts small inclosures such as the one made by appellant. (Dec. Dept. Interior, vol. 2, p. 460.)


*F. X. Murphy* and *Thomas Wren*, for Respondent.


I. Appellant's claim to the land and occupancy thereof being illegal and against public policy, cannot be enforced through the courts. The non-suit was therefore properly granted. (*Kitts* v. *Austin*, 23 Pac. Rep. 290; *Whittaker* v. *Pendola*, 20 Pac. Rep. 680; *United States* v. *Bird*, 19 Pac. Rep. 251; *Barkley* v. *United States*, 19 Pac. Rep. 37; *McGinnis* v. *Friedman*, 17 Pac. Rep. 635; *Whittaker* v. *Pendola*, 78 Cal. 296.)

II. The evidence shows that the plaintiff, although in possession of the land for many years, was not holding it under the timber culture act. He had taken none of the steps necessary under that act to acquire title to the land. That act also has been repealed. If the case was sent back for trial, plaintiff would not be entitled to maintain his possession of the land upon the ground that he was in possession under the general laws of the United States, with a view of entry.

By the Court, BELKNAP, C. J.:

This is an action of ejectment for the recovery of the posses-
sion of a tract of unsurveyed government land containing about
forty acres.

Plaintiff introduced testimony tending to prove prior posses-
sion of the demanded premises, and an ouster, and rested his
case. No evidence was introduced tending to show the nature
of defendant's claim. A motion for nonsuit was granted, upon
the ground that plaintiff had not acquired, nor shown any in-
tention of acquiring, the government title to the land. In
support of the ruling, respondent relies upon the provisions of
an act of congress entitled "An act to prevent the unlawful
occupancy of public lands," approved February 25, 1885 (23
Stat. at Large, 321). The provisions of the act upon which re-
liance is placed are those which declare that the inclosure of
any portion of the public domain to which the person making
the inclosure has no claim or color of title or asserted right,
made in good faith, with a view to entry under the land laws
of the United States, or any fencing or inclosing of such lands
whereby others are prevented from settling thereon under the
public land laws of the United States, is unlawful.

Prior to the adoption of this statute, the supreme court of the
United States, in *Atherton* v. *Fowler*, 96 U. S. 513, and other
cases, had held that a pre-emption right to public land could
not be initiated by intrusion upon the possession of another.
In that case the court said: "It is not to be presumed that
congress intended, in the remote regions where these settlements
are made, to invite forcible invasion of the premises of another,
in order to confer the gratuitous right of preference of pur-
chase on the invaders. In the parts of the country where these
pre-emptions are usually made, the protection of the law to
rights of persons and property is generally but imperfect
under the best of circumstances. It cannot, therefore, be be-
lieved, without the strongest evidence, that congress has ex-
tended a standing invitation to the strong, the daring, and the
unscrupulous to dispossess by force the weak and the timid from
actual improvements on the public land, in order that the in-
tentional trespasser may secure by these means the preferred
right to buy the land when it comes into market." (Pages
516, 517.)

Advantage was taken of this ruling to fence large bodies of public land by persons having no claim of right thereto, to the exclusion of persons desiring to make bona fide settlements thereon.  To protect actual settlers in good faith against this wrongful interference, congress declared the acts prohibited by the statute misdemeanors, punishable by fine and imprisonment, and authorized the president to employ force to remove and destroy the inclosures.  The act does not, however, in terms, permit a private person to dispossess the occupant of an unlawful inclosure, and the reasons given in *Atherton* v. *Fowler*, refute such a construction.

The case of *Laurendeau* v. *Fugelli* (decided by the supreme court of Washington Territory in the year 1889) is directly in point.  In that case the plaintiff held by possession only. Defendant, whom the court presumed to be a pre-emptor, broke down a portion of plaintiff's fence, entered upon and took possession of the land.  It was claimed that plaintiff was within the prohibitions of the act of congress forbidding the fencing of public lands, and, therefore, defendant could lawfully enter.  Upon this point the court said: "To invoke the act of 1885 as a license to opposing claimants, pre-emptors, and the like, of a law unto themselves that either may break down the inclosure of the other and lawfully enter, is to use a rule made for desperate cases, requiring desperate remedy, and in itself exceptional; to overturn the law; to bring chaos instead of social order; to make the court a useless formality, and the law an object of contempt." (21 Pac. Rep. 30.)

It is unnecessary for us to go to the full extent of the Washington case; for the reason that in the case at bar no evidence was introduced touching defendant's claim, and, for aught that appears, he may have had no better right than the plaintiff. Upon the facts, we consider that plaintiff established a *prima facie* case, and that the nonsuit ought not to have been granted. The judgment of the district court is reversed, and cause remanded.