[Civil No. 576.   Filed April 16, 1898.]

[53 Pac. 192.]

ELIAS L. TIDWELL, Defendant and Appellant, v. THE CHIRICAHUA CATTLE COMPANY, Plaintiff and Appellee.

1. EJECTMENT—PUBLIC LANDS—OCCUPANT'S TITLE—EVIDENCE—DEEDS —ADMISSIBILITY—REV. STATS. ARIZ. 1887, PARS. 2222, 2223, 3135, 3138, CITED AND CONSTRUED — POSSESSORY ACTION — DEFENSES — TITLE IN UNITED STATES NO DEFENSE.—Deed from former owners and holders to plaintiff of the premises in controversy, the title

to which is in the United States, are admissible in evidence as
tending to show plaintiff's right to possession in an action of eject-
ment against a trespasser or intruder, paragraph 2222, *supra*, pro-
viding that all persons who have settled upon and cultivated land
with a view to pre-empting the same shall be protected in the
possession of the same, with the improvements, to the extent of
one hundred and sixty acres, and paragraph 2223, *supra*, providing
that all rights acquired by the above section may be sold and con-
veyed as interests in real estate. In accordance with these pro-
visions, our statutes do not necessitate the showing by the plaintiff
of an absolutely clear anu perfect title, but provide (par. 3135,
*supra*) that "the action of ejectment may be maintained in all cases
where the plaintiff is legally entitled to the possession of the
premises." Paragraph 3138, *supra*, which provides that "the de-
fendant may plead not guilty, and under such plea give in evidence
any testimony tending to show that the plaintiff is not entitled to
such possession, or that the title is in some person other than the
government," *per contra*, excludes evidence of title in the govern-
ment as a defense in ejectment.

2. PUBLIC LANDS—RIGHT OF CORPORATION TO HOLD—EJECTMENT—CAN-
NOT BE QUESTIONED EXCEPT BY GOVERNMENT.—The question as to
the power and authority of a corporation to take, own, or hold
in possession unsurveyed public land of the United States cannot
be raised by a defendant in ejectment, being only open to question
in a direct proceeding instituted by the government for that
purpose.

3. SAME — INITIATION OF RIGHT — QUALIFICATIONS — RIGHTS INITIATED
PROPERLY — MAY BE TRANSFERRED TO ALIEN OR CORPORATION —
POWERS OF GRANTORS—WHO MAY QUESTION.—While a qualified
citizen can initiate a right to a tract of public land from which
there can be perfected a title in fee, the rights thus initiated are
property, susceptible of sale and transfer even to aliens, corpora-
tions, or other persons not capable of initiating such rights, and
such grantees may own, possess, hold, enjoy, sell, transfer, and
execute competent conveyances thereof, and the incapacity of such
persons to originally initiate such right, or to subsequently perfect
title, can be called in question only by the sovereign, and cannot
be invoked by a stranger to attack their right of possession or the
validity of their conveyances to subsequent grantees.

4. EJECTMENT—POSSESSION—EVIDENCE—SUFFICIENCY.—In an action of
ejectment, it is not error for the trial court to hold that plaintiff
was in possession when defendant's own testimony shows that
there was a fence around the land; that most of it was in cultiva-
tion when he went there; that there was a house on the land, agri-
cultural crops growing, and alfalfa in the stack; that he knew
plaintiff claimed the property; that the occupants told him they
were keeping it for plaintiff; that there was property there belong-
ing to plaintiff; and that he moved into plaintiff's house.

Arizona 5—23

5. SAME—SAME—SURREPTITIOUS ENTRY IN ABSENCE OF OWNER—EQUIVA-
   LENT TO FORCIBLE ENTRY IN PRESENCE.—A surreptitious entry dur-
   ing the temporary absence of the owner or tenant, against the will
   of said owner or tenant, and without his permission, is equivalent·
   to a forcible entry against his will in his presence.

6. PUBLIC LANDS—RIGHT TO ENTER AND SETTLE UPON LANDS ALREADY
   OCCUPIED.—A person has no right to enter and make settlement
   upon public land settled upon and improved by others so long as
   such settlers or their grantees, by use, occupation, and cultivation,
   keep alive the rights they have initiated.

7. SAME—UNLAWFUL INCLOSURES—ACT OF CONGRESS OF FEBRUARY 25,
   1885, CHAP. 149, SEC. 1, 23 STATS. 321, CONSTRUED—INAPPLICABLE
   TO TRACTS OF LESS THAN ONE HUNDRED ACRES OF LAND HELD IN
   GOOD FAITH UNDER CONVEYANCES OF RECORD — TRESPASS. — The
   statute, *supra,* has no application to the fencing of a tract of less
   than one hundred acres settled upon, cultivated, and irrigated, and
   held under conveyances of record, whether valid or invalid, under
   which the occupant claims in good faith. The defendant could not
   have made a lawful entry on the land of plaintiff so inclosed, but
   was a mere trespasser.

APPEAL from a judgment of the District Court of the
Second Judicial District in and for the County of Graham.
Owen T. Rouse, Judge. Affirmed.

The facts are stated in the opinion.

William H. Barnes, William Lovell, and Wiley E. Jones,
for Appellant.

Appellant urges the following propositions: 1. Appellee
was not in possession at the time of appellant's entry thereon;
2. Appellant's entry thereon was peaceable and without
force; 3. Appellant had the right to enter peaceably and
without force upon said lands and make settlement; 4. Ap-
pellee's inclosure was unlawful, and appellant had the right
to enter through or over the fence of appellee and make set-
tlement in good faith.

One occupying public lands without title cannot convey
even the right to possession to another by deed. "It could
not be effected by a written transfer." *Missionary Society* v.
*Dalles City,* 107 U. S. 344, 2 Sup. Ct. 672.

A sale of a possessory or agricultural claim on public land
is merely a contract for abandonment of possession by the
vendor, and such abandonment will enable the vendee under

the statute to treat the claim as unoccupied public lands, and by his own compliance with the possessory act to appropriate the claim to himself.

Plaintiff in possession of public lands, not complying with the public act, could not maintain an action against one going upon lands so occupied by plaintiff and who held the same adversely. *Sweetland* v. *Froe*, 6 Cal. 140; *Wright* v. *Whitesides*, 15 Cal. 47; *Coryell* v. *Cain*, 16 Cal. 567.

In Oklahoma it has always been held that a "purchase of improvements of a settler upon public lands gave no settlement right on the purchaser, as such right is not transferable." *Sproat* v. *Durland*, 2 Okla. 24, 35 Pac. 682, 886.

California holds that a deed of a mere possessory right to land cannot be set up against an after-acquired title of the grantor. *Gee* v. *Moore*, 14 Cal. 472; *San Francisco* v. *Lawton*, 18 Cal. 465, 79 Am. Dec. 187; *Morrison* v. *Wilson*, 30 Cal. 344; *Hutton* v. *Frisbie*, 37 Cal. 475; *Emerson* v. *Sansome*, 41 Cal. 552; *Cadiz* v. *Majors*, 33 Cal. 288.

The question of prior right arising the plaintiff's right of possession may be inquired into and must be shown. *Sunal* v. *Hepburn*, 1 Cal. 255; *Meeker* v. *Williamson*, 4 Martin, 625.

There can be no possession unless the claimant has performed certain acts to constitute a location. It requires a location to give the right of possession, and a second person going upon a claim in the possession of another who has not perfected his location may make a valid location and thereby establish a "right of possession" as against the prior possessor, who is a transgressor from the time the second party has perfected his location in compliance with the law. A party must comply with the law to prevent a possession by another person. The "dog in the manger" policy is not tolerated as to our public domain by either state or federal laws. *Jordan* v. *Duke*, 4 Ariz. 278, 36 Pac. 896; *Belk* v. *Meagher*, 104 U. S. 384; *Horswell* v. *Ruiz*, 65 Cal. 111, 7 Pac. 197; *Morenhout* v. *Wilson*, 52 Cal. 263; *Barrett* v. *Sims*, 59 Cal. 613.

Location does not come from possession, but possession from location. *McCormick* v. *Barnes*, 1 Utah, 260; *Hopkins* v. *Noyes*, 4 Mont. 550, 2 Pac. 280; *Sweet* v. *Ronk*, 7 Colo. 443, 4 Pac. 752, 4 West Coast, 116.

"A party not having shown any capacity in himself to

acquire the government title to demand premises, nor any effort or intention to do so, stands in the position of a mere trespasser upon public domain, with an inclosure erected maintained contrary to the express provisions of the act of Congress of February 25, 1885, and the main question in the case is whether by such unauthorized inclosure he can prevent a homestead entry of the land by a citizen of the United States who goes peaceably upon a portion of the land and in other respects complies with the law. . . . We hold that the plaintiff (the later possessor) had the right to make his homestead entry of the whole tract, notwithstanding the possession by defendant of the greater part of it. . . . The evidence brought the plaintiff squarely within the provisions of the second section of the act of the legislature of this state (California) passed March 23, 1874, which reads as follows: 'Every qualified homestead claimant under the homestead laws of the United States, residing on public lands of the United States, within this state, who shall have made his original homestead entry in accordance with said laws, shall, from the date of said entry, be deemed to have title to and be in possession of all the land described in said entry, as against trespassers, and all persons having no superior right or title to the same, as long as he shall continue to reside thereon, and to comply in good faith with said homestead laws.' *Whittaker* v. *Pendola,* 78 Cal. 296, 20 Pac. 680. *Atherton* v. *Fowler,* 96 U. S. 513, which is so often cited by all persons seeking to claim or hold by prior possession, was a case where the first settler with a right to perfect title had his lawful possession invaded by a large number of persons, and was dispossessed in order to defeat his pre-emption right. This the court would not permit, but the court commenting upon one of its former decisions (*Johnson* v. *Towsley,* 13 Wall. 72), where it had sustained the party later in possession, said: 'The first party may not have the qualifications of a pre-emptor, or he may have pre-empted other land, or he may have permitted the time for filing his declaration to elapse, in which case another person may become pre-emptor, or it may not be known that the settlements are on the same quarter.' In *Atherton* v. *Fowler, supra,* the court had in view all along the case before it wherein the first possessor had a right to acquire title from the government, saying: 'It cannot be

believed therefore without the strongest evidence that Congress has extended a standing invitation to the daring and unscrupulous to dispossess by force the weak and timid from the actual improvement on public land, in order that the intentional trespasser may secure by these means the preferred right to buy land from the government when it comes into the market.' '' . . .

Thus in all the cases in the United States supreme court each party dispossessed had a pre-emption right to acquire title, and was dispossessed by force, in order that the party ousting might obtain a right of possession. Such are not the facts in the case before this court, as the plaintiff has no right to acquire the title, was not dispossessed by force, and his possession was unlawful.

In *Johnson* v. *Towsley, supra,* the United States supreme court said that Congress intended to provide for the protection of the first settler by giving him three months to make his declaration, and for all other settlers by saying, "If this is not done within three months, any one else who has settled on it within that time, or at any time before the first settler makes his declaration, shall have the better right."

These decisions make the appellant secure in his possession.

It is a fundamental principle of law in ejectment that a plaintiff must recover, if at all, upon the strength of his own title, not upon the weakness of his opponent. *Rush* v. *French,* 1 Ariz. 99, 25 Pac. 816; *Cox* v. *Hayes,* 67 Cal. 317, 7 Pac. 722.

"There can be no color of title in an occupant of land, nor good faith affirmed of a party holding adversely, where he knows that he has no title, and that under the law, which he is presumed to know, he can acquire none by his occupancy." *Deffeback* v. *Hawke,* 115 U. S. 392, 6 Sup. Ct. 95; *Caldwell* v. *Bush,* 6 Wyo. 342, 45 Pac. 488.

A person who has a right of possession may by a peaceable entry upon land acquire sufficient possession of it to maintain an action against any one who, being in possession at the time of his entry therein, wrongfully continues upon the land. *State* v. *Ross,* 4 Jones' Law, 315, 69 Am. Dec. 754; *Low* v. *Elwell,* 121 Mass. 309, 23 Am. Rep. 272; *Caldwell* v. *Bush,* 6 Wyo. 342, 45 Pac. 488.

William Herring, and Moorman & McFarland, for Appellee.

The grantors of plaintiff were entitled to be protected in the peaceable and quiet enjoyment of the premises in question. Rev. Stats. Ariz., par. 2222.

All the rights acquired by plaintiff's grantors under the above section may be sold and conveyed as real estate. Rev. Stats. Ariz., par. 2223.

The action being ejectment, the court properly excluded testimony offered by defendant that the title to the premises in question was in the United States government. Rev. Stats. Ariz., par. 3138.

The mere fact that plaintiff corporation had not the capacity to take title to government land does not permit a collateral attack upon such title by an individual unless the same is directly authorized by legislative enactment.

In the case under consideration it is well settled that the only party who can assail the title of plaintiff is the United States government itself. *National Bank* v. *Matthews,* 98 U. S. 628; *Butte Hardware Co.* v. *Schwab,* 13 Mont. 351, 34 Pac. 24; *Connecticut Life Ins. Co.* v. *Smith,* 117 Mo. 261, 22 S. W. 628; *Brown* v. *Killabrew,* 21 Nev. 437, 33 Pac. 865; *Dodge* v. *Yates,* 76 Cal. 251, 18 Pac. 323; *Hambledon* v. *Dubain,* 71 Cal. 136, 11 Pac. 865; *Atherton* v. *Fowler,* 96 U. S. 513; *Bank* v. *Whitney,* 103 U. S. 99; *Fortier* v. *New Orleans Bank,* 112 U. S. 439, 5 Sup. Ct. 234.

"Where a corporation is incompetent by its charter to take title to real estate a conveyance to it is not void, but only voidable, and the sovereign alone can object. It is valid until assailed in a direct proceeding instituted for that purpose." *Bank* v. *Matthews,* 98 U. S. 628; *Leazare* v. *Hillegas,* 7 Serg. & R. 313; *Groundie* v. *Water Co.,* 7 Pa. St. 323; *Runyon* v. *Coster,* 14 Pet. 122; *The Banks* v. *Poitaux,* 3 Rand. 136, 15 Am. Dec. 706; *McIndoe* v. *City of St. Louis,* 10 Mo. 577.

DOAN, J.—This is an action in ejectment that was brought by the appellee, as plaintiff, in the district court of Graham County, Arizona, for the possession of certain premises designated in the complaint as the "Cottonwood Ranch," a tract of unsurveyed public land, containing less than one hundred and sixty acres, and the improvements thereon. The complaint alleges appellee to be a corporation; "that it was en-

titled to the possession of said premises; that a large portion of the land is under fence, has been cultivated, and is capable of producing profitable crops from irrigation; that plaintiff has and owns certain ditches, water-rights, and water applicable thereto, enabling it to profitably cultivate said lands; that, while plaintiff was so entitled to such possession, defendant entered into and dispossessed plaintiff of said premises, and unlawfully withholds from plaintiff the possession thereof." Plaintiff, to sustain its contention, introduced certain articles of incorporation and certain deeds of record by which it deraigned title to the premises in question from its grantors and predecessors in interest. Defendant pleaded not guilty, and alleged "that the described land is a part of the unsurveyed public land of the United States, subject to settlement, and, when surveyed, subject to entry; that plaintiff is a corporation, and has no right, by its charter or by law, to possess and occupy any of the unsurveyed public lands, nor can said corporation acquire title thereto; and further alleges that defendant went upon said land when it was unoccupied and in the possession of no one; that defendant took possession thereof as a part of the unsurveyed public lands of the United States, for the purpose of acquiring title thereto, and with a view to entry as soon as the same should be surveyed." The district court found "that the plaintiff is entitled to the possession of the premises, to the sum of one hundred dollars damages for unlawful detention, and to ten dollars monthly rental from date of judgment until restitution."

Appellant in his brief presents ten assignments of error. The first four may be considered together, and allege that "the court erred in admitting as evidence the deeds of former owners and holders of said premises to plaintiff and its predecessors and grantors, upon the ground that such deeds conveyed no title, with the further objection that plaintiff, being a corporation, could not, under the law, own, control, or hold possession of unsurveyed public lands of the United States."

The first error assigned raises the point that the title is in the United States, and that, the title being in the United States, the deeds convey no title, and are inadmissible in evidence to show color of title or right of possession thereunder in ejectment against a trespasser or intruder. Besides being

contrary to the universal holding of our courts on this subject, this objection is fairly met by the provisions of our statutes. This is a suit for possession. Paragraph 2222, section 1, of the Revised Statutes of Arizona provides: "All persons who have settled upon and cultivated a tract of land in this territory, with the view of availing themselves of the benefit of the pre-emption laws of the United States, shall be protected in the peaceable and quiet enjoyment of said tract of land, with all the improvements thereon, to the extent of one hundred and sixty acres, if unsurveyed according to the cardinal points; and if surveyed, then according to the lines of said surveys." Paragraph 2223, section 2, provides: "All the rights acquired by the above section may be sold and conveyed as interests in real estate." In accordance with these provisions, our statutes in regard to ejectment do not necessitate the showing by the plaintiff of an absolutely clear and perfect title, but provide,—paragraph 3135: "The action of ejectment may be maintained in all cases where the plaintiff is legally entitled to the possession of the premises." Paragraph 3138: "The defendant may plead not guilty, and under such plea give in evidence any testimony tending to show that the plaintiff is not entitled to such possession, or that the title is in some other person other than the government." The provision for evidence of title in any other person other than the government, *per contra,* excludes evidence of title in the government, as a defense in ejectment; and as the statutes quoted provide that "all persons who settle upon and cultivate . . . shall be protected in the use and enjoyment of said land with all the improvements thereon," and that all the rights thus acquired "may be sold and conveyed as interests in real estate," the deeds showing such sale and conveyance are clearly admissible as evidence tending to show plaintiff's right to protection in such use, possession, and enjoyment of the land and improvements thus conveyed.

The further objection is urged that plaintiff, being a corporation, has no right under its charter or under the law to take, own, or hold in possession unsurveyed public land of the United States. This is not the case as to its authority under its charter to own and hold real estate. Its articles of incorporation, presented in evidence, show, among its purposes, "the owning and dealing in real estate." But if own-

ing and holding real estate were beyond or contrary to the provisions of its charter, the weight of authority is against allowing that question to be raised by the defendant in this issue. In *Bank* v. *Matthews*, 98 U. S. 628, the United States supreme court held: "Where a corporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object. It is valid until assailed in a direct proceeding instituted for that purpose,"—and cites a strong line of authorities in support. It holds, further: "So an alien, forbidden by the local law to acquire real estate, may take and hold title until office found."

But stress is laid by the appellant upon the fact that this was public land, with the title yet remaining in the United States government, and that plaintiff, being a corporation, could not file on or perfect title thereto, that being a privilege reserved for qualified citizens only. The weight of authority has always been, and the settled policy of our courts may now, in the light of the more recent decisions on that point, be said to be, that while only a qualified citizen can, by location or filing, initiate a right to a tract of the public land, from which there can, by compliance with the requirements of the law and proper proof, be perfected a complete and valid title in fee,—the rights thus initiated by the qualified citizen become and are recognized as property susceptible of sale and transfer; and that such sale and transfer may be made to aliens, corporations, or other persons not possessing the qualifications that would enable them to initiate such rights and property interests. And when such sales and transfers are thus made, such grantees may own, possess, and hold, and enjoy the use and profits of such rights and property interests, and may sell and transfer the same to others, and execute competent conveyance thereof; and that the incapacity of such persons to originally initiate such right, or to subsequently perfect title, can be called in question only by the sovereign, and cannot be invoked by strangers to attack their right to be protected in the possession and enjoyment of such property, or the validity of their conveyance of the same to subsequent grantees. On this subject, the supreme court of the United States held as long ago as 1826, in an action of ejectment by *Governeur* v. *Robertson*, 11 Wheat.

332, 350, 352: "That an alien can take by deed, and can hold until office found, must now be regarded as a positive rule of law, so well established that the reason of the rule is little more than a subject for the antiquary." This ruling is approved and language quoted by the United States supreme court in *Manuel* v. *Wulff*, 152 U. S. 505, 14 Sup. Ct. 651. This was a case in which a citizen transferred by deed a mining claim to an alien, and the alienage of the grantee was pleaded by a contestant. Chief Justice Fuller quoted the above ruling, and, in accordance therewith, held that "as the grantor was a citizen, if his location were valid, his claim passed to his grantee, not by operation of law, but by virtue of his conveyance, and that the incapacity of the latter to take and hold by reason of alienage was, under the circumstances, open to question by the government only." In *Butte Hardware Co.* v. *Schwab*, 13 Mont. 351, 34 Pac. 24, it was contended that the plaintiff, as a corporation, was not competent to receive and hold an interest in an unpatented mining claim; and it appeared that the acquisition of such property was not specially within the scope of the object and purpose of the corporation, as expressed in its articles of incorporation. But the supreme court of Montana held that it could not be maintained even in such event that the title of the corporation as to such property was void, in favor of a stranger, who undertook unlawfully to assume and hold the property in question, and said: "No cases have been cited, and probably none can be found, where strangers have been heard to raise such a defense to their unwarranted claims upon the property of a corporation. To the contrary may be cited *First Nat. Bank* v. *Roberts*, 9 Mont. 323, 23 Pac. 718; *Bank* v. *Matthews*, 98 U. S. 621; *Bank* v. *Whitney*, 103 U. S. 99; *Fortier* v. *New Orleans Bank*, 112 U. S. 439, 5 Sup. Ct. 234."

The fifth, sixth, eighth, and ninth assignments are not sufficiently definite or specific to receive the attention of an appellate court.

The appellant urges four propositions of law under his seventh assignment of error, "that the judgment is contrary to law": (1) "Appellee was not in possession of the premises at the time of appellant's entry. (2) Appellant's entry thereon was peaceable and without force. (3) Appellant has the right to enter peaceably and without force upon said

lands, and make settlement. (4) Appellee's inclosure was unlawful, and appellant had the right to enter through or over the fence of appellee, and make settlement in good faith.'' We will consider these propositions *seriatim.*

. In regard to the possession by appellee at time of entry by appellant, there was some conflict of evidence. The testimony of Blake (one witness) was direct and positive: ''The company was in possession of the property at that time. Molino [the company's agent and tenant] was there at that time.'' The testimony of Snow (another witness) states: ''After Tidwell had moved in, I and three other men, employees of the company, cleaned out the ditch, turned in the water, and irrigated the alfalfa. Tidwell was present. He wasn't doing anything with the property as I remember, only living there.'' But the defendant's own testimony, while it is the only evidence that disputes or denies the possession of the plaintiff at time of entry, is sufficient to establish such possession beyond question. He stated: ''There was no one in possession of the land when I went there. The property was just standing there when I went into it. There was a fence around about one hundred acres of it, and most all of that was in cultivation, and there was one house on the land when I went there. Molino and Snow told me they were keeping it for the Chiricahua Company. Molino left the property about the third day of February, 1896. I put my family there, and took possession of it, the second day after Molino left. There was some property belonging to the Chiricahua Company when I went there. There was agricultural crops there when I went there,—alfalfa. It was cut and stacked. At the time I went there, Molino has some property on that ranch. He had some hogs. He had some corn and some wire. I went into the Chiricahua house. I knew that the Chiricahua Company claimed the improvements there. I am living in my own house now. I built it the same month I moved in there. I use the company's house for a storeroom. I have not filed on the land in the land office because it has not yet come on the market.'' This evidence establishes the fact that at the time of change of tenants or employees, after the one man moved out, and before the arrival of his successor, the defendant moved in. In fact, he moved in before the first man had entirely moved out, for he testified that when he went there

Molino, the retiring tenant, had not yet removed his hogs, corn, or fencing-wire, but that Molino had that property yet remaining on the ranch. He seems to have adopted the theory that the physical presence of the owner or his representative was necessary to constitute possession. "Possession is the detention or enjoyment of a thing which a man holds or exercises by himself or by another, who keeps or exercises it, in his name." *Redfield* v. *Railroad Co.*, 25 Barb. 54. "Possession of land is the holding of, and exclusive exercise of dominion over it." *Booth* v. *Small*, 25 Iowa, 177. "There are two kinds of possession of real property known to the law,—actual and constructive. It is actual possession when the owner goes upon the land to take possession, and exercises acts of ownership over it; also when one having title is in possession of land by his tenant, agent, or steward." *Fleming* v. *Maddox*, 30 Iowa, 240. "By actual possession" is meant a subjection to the will and dominion of the claimant, and is usually evidenced by occupation, by a substantial inclosure, by cultivation, or by appropriate use." *Coryell* v. *Cain*, 16 Cal. 567. "Actual possession as much consists of a present power and right of dominion as an actual corporal presence." *Minturn* v. *Burr*, 16 Cal. 107-109.

The claim that the court erred in ruling that plaintiff was in possession is futile, and is fairly in line with the claim "that the defendant went upon the land when it was unoccupied, and in the possession of no one, and took and asserted possession over it, as a part of the unsurveyed public land," when his own testimony in support thereof states that there was a fence around about one hundred acres of it; that most all of that was in cultivation when he went there; that there was a house on the land, agricultural crops growing, and alfalfa in the stack; that he knew the appellee claimed the property; that the occupants, Molino and Snow, told him they were keeping it for the appellee; that Molino had some property yet on the ranch,—some hogs, corn, and wire; that there was property there belonging to the appellee; and that he moved into the appellee's house.

The second proposition—"Appellant's entry was peaceable and without force"—is not material, for the reason that in law a surreptitious entry during the temporary absence of the owner or tenant, against the will of said owner or tenant,

and without his permission, is equivalent to a forcible entry against his will, in his presence.

The third proposition—"Appellant had the right to enter peaceably and without force upon said lands, and make settlement"—is utterly and absolutely untenable. It would only be true if the lands in question were unoccupied public lands, and subject to settlement; but this doctrine became inapplicable to these lands, when Brown and Grieves settled upon and improved them, and thus withdrew them from entry and settlement by any subsequent entryman, and remained inapplicable so long as Brown and Grieves and their grantees and successors, by use, occupancy, and cultivation, kept alive the rights and improvements thus initiated, and will remain inapplicable so long as these rights are thus kept alive by these settlers, their grantees and successors, and such lands remain unsurveyed public lands. That this has been done in this instance was fully established by the evidence adduced in the district court. The deeds presented show that the appellee held by the conveyances from the original settlers and their grantees, and not by operation of law. The testimony of witnesses fully establishes the fact that the appellee and its grantors had held continuous possession of the land for several years, and from the date when their settlement and improvement had been originally made. The visible improvements—the dwelling-house, the inclosed fields, alfalfa growing, hay cut and stacked, hogs and corn on the ranch, an irrigating ditch that had been kept in constant repair, and had been used continuously for years on these premises, and through which the appellee turned in the water, and irrigated the alfalfa in the presence of appellant, even after the appellant had moved into the house on the ranch—place this property clearly within the scope of the decisions that stand in an unbroken line from *Coryell* v. *Cain*, 16 Cal. 567, and *Atherton* v. *Fowler*, 96 U. S. 513, to the present date, and which is aptly stated by Chief Justice Murphy, of the supreme court of Nevada, in *Brown* v. *Killabrew*, 21 Nev. 437, 33 Pac. 865: "It has been held by all courts since the decision in the case of *Atherton* v. *Fowler*, 96 U. S. 513, that a person cannot forcibly or surreptitiously enter upon the actual inclosure of another on the ground that the title is in the United States and thereby acquire a right of possession to the land within

the inclosure; and the fact that the defendant alleged that at some future time he intended to connect himself with the government title, by making application for the land as a homestead, did not give him any right as against the plaintiff."

This brings us to the fourth proposition—"Appellee's inclosure was unlawful, and appellant had the right to enter through or over the fence of appellee, and make settlement in good faith." The affirmance of the first proposition would not necessarily establish the second (*Gonder* v. *Miller,* 21 Nev. 180, 27 Pac. 333); but as there is no claim, and can be none, for the second, except upon the establishment of the first, we will direct our attention to that. This proposition is based upon an act of Congress of February 25, 1885, "To prevent the unlawful occupancy of public lands." The first section provides: "All inclosures of any public lands, . . . to any of which land included within the inclosure the person . . . or corporation making or controlling the inclosure had no claim or color of title, made or acquired in good faith, . . . at the time any such inclosure was or shall be made, are hereby declared to be unlawful, and the maintenance, creation, construction, or control of any such inclosure is hereby forbidden." The second section empowers the court before which the suit is brought, in case the inclosure shall be found unlawful, to make the proper order or decree for the destruction of the inclosure in a summary way, unless the inclosure shall be removed within five days after the order of the court. The construction and scope of this act are discussed at considerable length in *United States* v. *Brandenstein,* 32 Fed. 738, and in *Cameron* v. *United States,* 148 U. S. 301, 13 Sup. Ct. 595. Both cases emphasize the restriction of this unusual and summary remedy to cases of wholly unauthorized appropriations and inclosures of public lands, to which the party making the inclosure "had no claim or color of title, made or acquired in good faith." In the latter case, the supreme court of the United States held that the provisions of the act of February 25, 1885, do not operate upon persons who have inclosed land under a *bona fide* claim or color of title, and said: "The act of Congress . . . was passed in view of a practice which had become common in the western territories of inclosing large areas of lands of the United States by

associations of cattle-raisers who were mere trespassers, without shadow of title to such lands, and surrounding them by barbed-wire fences, by which persons desiring to become settlers upon such lands were driven or frightened away, in some cases by threats or violence. The law was, however, never intended to operate upon persons who had taken possession under a *bona fide* claim or color of title. . . . It is a sufficient defense to such a proceeding to show that the . . . defendant had claim or color of title made or acquired in good faith." In *Wright* v. *Mattison,* 18 How. 50-56, it was said by Mr. Justice Daniel: "The courts have concurred, it is believed, without an exception, in defining 'color of title' to be that which in appearance is title, but which in reality is no title. . . . A claim to property, under conveyance, however inadequate to carry the true title to such property, and however incompetent might have been the power of the grantor in such conveyance to pass a title to the subject thereof, yet a claim asserted under the provisions of such a deed is strictly a claim under color of title." We do not wish to be understood as intimating an opinion as to the validity of defendant's title; but we think that defendant has shown color of title to the land inclosed. In the case at bar the inclosure was made by the original settler as an incident to his settlement and cultivation, and sold and conveyed by him to the grantor of appellee. The lands inclosed were not "tracts of vast area, or wild unimproved land of the public domain," as contemplated by the act of Congress, but a tract of less than one hundred and sixty acres, all in cultivation and actual use for agricultural purposes, and was held by the appellee, not "without claim or color of title," but by conveyances of record from grantors, under which appellee had for years held, occupied, plowed, seeded, irrigated, cultivated, and improved it. Such being the case, we hold, as did the supreme court of Washington in *Laurendeau* v. *Fugelli,* 1 Wash. 559, 21 Pac. 29, that "the appellant could not have made any lawful entry on the land. No law exists which gave him any right to such entry. He was a naked trespasser, making an unwarranted entry upon the inclosure of another,— an inclosure and occupation of years, upon which time, labor, and money had been expended. In such wrongful attempt to seize the fruits of the labors of another there could be no

*bona fide* claim of right whatever.'' We find no error in the record, and the judgment of the district court is therefore affirmed.

Street, C. J., Sloan, J., and Davis, J., concur.