[No. 1750.]

### W. C. SHORT, RESPONDENT, *v.* T. A. READ, APPELLANT.

1. PUBLIC LANDS—RIGHTS ACQUIRED BY OCCUPANCY. Entry on public lands as a homesteader and application to the government for a survey preliminary to making a proper application to purchase the land and obtain a patent therefor do not show a better right to the land by connecting such homesteader with the government title than that of one in possession where such entry was by trespass.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *John S. Orr*, Judge.

Ejectment by W. C. Short against T. A. Read. From a judgment for plaintiff and an order denying a new trial, defendant appeals. **Affirmed.**

The facts appear sufficiently in the opinion.

*Abe Darlington*, for Appellant:

I.   Appellant made a peaceable entry upon the land and his rights attach from the time that he settled thereon. "By section 3 of the act of May 4, 1880 (21 Stats. 141), the right of a party entering land under a homestead law was made to relate back to a time of settlement." (*Maddox* v. *Burnham*, 156 U. S. 546.) "The claim of a defendant (who has purchased rights of a prior possessor) to a right of preëmption stands in no better plight than if there had been no prior occupant of the lands. His own settlement can alone be considered. He had no claim to the lands when the plaintiff settled upon them and he acquired none by his purchase of

parties who had previously occupied them." (*Quinby* v. *Conlan*, 104 U. S. 420.) Had respondent ever had possession, his position would be no better. "Mere possesion of public lands without title does not enable party to sue one who enters upon same, more particularly when party entering derives his title from proper officers of government." (*Burgess* v. *Gray,* 16 How. 65, approved and applied in *Oaksmith* v. *Johnson*, 92 U. S. 347, denying recovery in ejectment to plaintiff who relied upon forty years' possession of public lands.) One who holds possession of public lands without endeavoring to secure title under one of the public land laws is on the land in violation of law and without any legal right, and, in such case, occupation is mere trespass, and the party will not be protected therein against one who has made a valid adverse claim, and such illegal possession cannot defeat the entry thereof by a qualified person who has complied with law in every respect except the intrusion upon the possession of another. (*Osborne* v. *Haven*, 1 Copp, 540; *Molyneux* v. *Young*, 1 Copp, 560; *Nickals* v. *Burbank*, 1 Copp, 566; *Powers* v. *Forbes*, 1 Copp, 563; *Marks* v. *Bray*, 1 Copp, 469; *Coon* v. *Freel's Heirs*, 16 L. D. 202; *Wheeler* v. *Rodgers*, 28 L. D. 250; *Haven* v. *Haws*, 63 Cal. 514; *Whittaker* v. *Pendola*, 78 Cal. 296; *Kitts* v. *Austin*, 83 Cal. 167; Act of February 25, 1885, 23 Stats. 321.) An enclosure of public land made in violation of the statute is no bar to the acquisition of a settlement right by another. An intending settler has the right to cut a fence to gain access. Intent of act of February 25, 1885, is to forbid the enclosing of any portion of the public domain, unless made in pursuance of a *bona fide* intention to claim the land enclosed under the land laws. (*Jones* v. *Kirvy*, 13 L. D. 702.) In the above case, the party enclosing had purchased a scrip entry of part of the land.

II. In this case, as we have already suggested, the respondent never, at any time, had possession of any portion of the island, and we may add that none of his so-called predecessors ever had the possession contemplated by the law, ever resided upon the land or paid any taxes thereon, or made the improvements required by the possessory act to

authorize them to bring suit for possession, and the trial judge expressly finds that they did not comply with the requirements of the possessory act. So far as we are advised, it has never been held by an appellate court that an action, the foundation of which is prior possession, could be maintained by one who has never had possession. In the case of *Sunol* v. *Hepburn*, 1 Cal. 254, this question is elaborately discussed and therein the court says, at page 260: "To enable the plaintiffs to maintain the action they must establish two facts: First—That they were in actual possession at the time of the intrusion complained of; and, second, that they were entitled to be reinstated in the possession from which they claim to have been illegally evicted. It results from this, that, if they were not in possession at the time of the defendant's entry, they have never been in a position which would enable them to maintain this suit. * * * The conveyance to Sansevaine and Naglee cannot carry back their possession, either severally or jointly, with Sunol, beyond the period when they derived their title under it, and an entry on the land prior to the fifteenth day of December could not have been an intrusion on the possession of Sansevaine and Naglee." (*Siglar* v. *Van Riper*, 10 Wend. 414; *Buxton* v. *Carter*, 11 Mo. 481.)

*Cheney, Massey & Price*, for Respondent:

I. It appears from the undisputed testimony that the plaintiff and his grantors and predecessors in interest had béen in the actual possession of the property and had cultivated the same for many years prior to the commencement of this suit. It further appears that the defendant knew that this island was in the possession of plaintiff and his grantors when he entered thereon. It further appears that no entry could be made upon the island except by trespass upon the lands of Banta, the immediate grantor of the plaintiff, and that the defendant in entering upon the island trespassed upon other lands as well as upon the lands in controversy. It further appears from the testimony that it was not necessary to enclose the island by fences for the reason that the river to the north and east and west was ample protection,

and the enclosed lands of Mr. Banta lying to the south of the river protected the land and the crops in that direction. It further appears that entry could not be made upon the land except through the Banta land, and that the appellant and defendant in this action surreptitiously, after night, with full knowledge of the claims and possession of the plaintiff and his grantors, by trespass entered thereon. It further appears from the testimony that the defendant and appellant had not made an entry of this island, or in any manner connected himself with the title of the government; in fact, there was no method known to the law by which appellant could connect himself with the government title to this land; and it appears that he knew what the record disclosed as to the right of the respondent under the Hatch desert land entry when he went upon the lands in controversy.

II. The judgment and order appealed from were right. When the plaintiff had shown priority of possession and ouster by the defendant he was entitled to recover unless the defendant showed a superior or better right to possession himself. (*McFarland* v. *Culbert*, 2 Nev. 280.) The defendant not having connected himself with the title of the government, and being a mere trespasser, the prior possession of the grantors of the respondent was sufficient to authorize the judgment and decree. The actual possession of the land, its irrigation and cultivation and subjecting it to the dominion of the plaintiff and his grantors, was sufficient to protect the plaintiff in his rights against the defendant, a naked trespasser, who had not connected himself in any manner with the government title. (*Courtney* v. *Turner*, 12 Nev. 345.) Neither was it necessary to fence the land in order to reduce the same to the actual possession of the plaintiff as the other means indicated in the statement were effectual for the protection of the growing crops. (*Courtney* v. *Turner*, 12 Nev. 345; *Staininger* v. *Andrews*, 4 Nev. 59.) The supreme court of this state in the last case cited has defined actual possession. In that case the court saÿs: "Actual possession of land is the purpose to enjoy, united with or manifested by such visible acts, improvements or inclosures as will give to the locator the absolute and exclusive enjoyment of it." The

fact that the grantors of the plaintiff in this action many years ago entered upon this land, reclaimed it, irrigated it and cultivated it, and were irrigating and cultivating it at the time the entry was made, and that its location, with reference to the river and other lands belonging to Banta, was such as not to require fencing for protection, was sufficient to show actual possession and occupancy, within the meaning of that term, in Banta at that time of the unlawful entry. The supreme court of this state has also decided that a tenant in common cannot acquire a right of homestead to government land of which he is in possession for himself and his cotenant. (*Reinhart* v. *Bradshaw*, 19 Nev. 254.) The rights of an entryman, under the desert land act of 1877, are assignable. (*Phillips* v. *Carter*, 67 Pac. 1031.) Short's deed from Banta gave him all the possessory rights of his grantor. (*Brown* v. *Killabrew*, 21 Nev. 439.) The defendant is a mere intruder who acquires no rights by his wrongful entry upon lands in plaintiff's possession. (*Nickals* v. *Winn*, 17 Nev. 188.)

III.  In this case it was sought to justify the trespass upon the ground that Congress had passed an act making it unlawful to fence the public lands. This court in this last case declared that the act of Congress did not permit a private person to dispossess the occupant of an unlawful closure. In fact, only the government of the United States can complain if the title is still absolutely in the government of the possession of the plaintiff, and certainly the defendant is in no position to take the law into his own hands and seek by unlawful means to connect himself at some future day with the title of the government. This court in a later case declared that one who has purchased and received a conveyance of the improvements and possessory right upon unsurveyed public lands is entitled to recover in ejectment against one who entered by his permission and afterwards refused to surrender the possession, and that where such one entered with the consent of the owner of the enclosure and possessory right he could not refuse to surrender claim and right of possession on the ground that the title was in the United States, and that it was immaterial that by making an application for the land as a homestead he intended to connect himself with the

government title. (*Brown* v. *Killabrew*, 21 Nev. 438.) The case at bar is much stronger than the case last cited. Here the entry was not peaceable or with consent, but was a trespass, while in the last-cited case the entry was peaceable and the wrong was in the refusal to surrender it. We quote from the last decision: "And the mere fact that the defendant alleged that at some future time he intended to connect himself with the government title by making application for the land as a homestead did not give him any right as against the plaintiff who was rightfully in possession of the land at the date of the alleged ouster, for when no better title than possession is shown, he who is prior in time is prior in right."

IV. In the case at bar the land was still unsurveyed land of the United States in the possession of the plaintiff under a desert land entry which had not been perfected, and also upon the proof in his possession or right of possession upon a simple possessory title which was good as against every person in the world except the government. The plaintiff in this case was connected with the government's title by the desert land entry, but if a defect existed in that entry his cultivation and possession of the property was such that under the former decisions in this state a mere trespasser could not initiate any title by such trespass, and the ouster entitled the plaintiff, under the decisions cited, to maintain ejectment and, upon the proof of the facts of possession, irrigation and cultivation, to a judgment for possession as against the defendant, who is not an entryman and who could not be an entryman of the same lands.

By the Court, Norcross, J.:

This is an action in ejectment to recover possession of what is known as "Scott Island," in the Truckee River, near the City of Reno. Trial was had before the court without a jury, and judgment rendered in favor of plaintiff. Defendant appeals from the judgment and an order denying his motion for a new trial.

The material facts of the case established at the trial are as follows: The shore land on both sides of the river adjacent to the island in controversy was surveyed by the gov-

ernment about the year 1863, but up to the time of this trial
the island had never been so surveyed. In July, 1877, one
A. J. Hatch filed in the United States Land Office at Carson
City his declaration of intention to reclaim the island under
the desert land act, and thereupon received the register's and
receiver's duplicate receipt and certificate showing that the
first payment on account of the purchase price of the land
had been made. On January 13, 1881, an application for
survey of the island was made, and on the following day all
proofs and the application for survey were sent to the Gen-
eral Land Office at Washington. In 1887, Hatch conveyed
the island together with other land on the south bank of the
river adjacent thereto to one O. Madden. In 1890, Madden
conveyed the same property to one A. Banta. On February
23, 1906, Banta conveyed the island in controversy to the
plaintiff, respondent herein. It appears that as early as 1871
Hatch claimed 140 acres of unsurveyed land, including the
island, and filed a possessory claim therefor in the recorder's
office in Washoe County, Nevada. In 1876 or 1877 he con-
structed a flume across the south channel of the river to the
island. In 1895 another flume was constructed to the island
to irrigate it, by Gelmstead, Banta's lessee. The sagebrush
was cleared off, onions and potatoes planted, and the next year
it was seeded to alfalfa. The island had been irrigated and
cultivated, and crops of alfalfa raised upon it by Banta's
lessees from 1895 to 1905, and from thirty to forty tons of
hay were harvested annually therefrom, and after the hay
was cut it was used as a pasture. Across the western or
upper portion of the island a fence had been constructed,
separating a small portion of the island claimed by one
Haydon from the main part of the island lying to the east,
which was claimed by Banta, and there was a fence along
the south side sufficient to keep stock upon the island. On
or about the 12th of October, 1905, between 6 and 6:30 p. m.,
the appellant Read entered upon the island with a load of
lumber, food, and cooking utensils, and located himself
thereon. At the time of his entry there was upon the
island, known to him, a flume for carrying water, ditches,
and fences, and he found there a field of alfalfa, and knew

that Banta was growing the alfalfa and was claiming the land. He admitted that he entered upon the island for the purpose of "jumping it." To reach the island appellant was obliged to go through Banta's inclosed field lying south of the river and adjacent thereto. There is no evidence that the island at the time the defendant entered upon it was claimed by anyone, except Hatch and his grantees, Madden and Banta, and there is no contradiction of the evidence that the island was successively claimed by Hatch, Madden, and Banta, and that it was cultivated continuously each year from 1895 down to the time of defendant's entry thereon.

It appears from undisputed testimony that the plaintiff and his grantors and predecessors in interest had been in the actual possession of the property, and had cultivated the same, for many years prior to the commencement of this suit. It further appears that the defendant knew that this island was in the possession of the plaintiff's grantors when he entered thereon. It further appears that no entry could be made upon the island without consent, except by trespass upon the lands of Banta, the immediate grantor of the plaintiff, and that the defendant in entering upon the island trespassed upon other lands as well as upon the lands in controversy. It further appears from the testimony that it was not necessary to inclose the island by fences, for the reason that the river to the north and east and west was ample protection, and the inclosed lands of Mr. Banta lying to the south of the river protected the land and the crops in that direction. After the defendant entered upon the island, he erected a dwelling house, and established his family therein, and claims the right to hold the island under the homestead law. No entry has as yet been made by him in the land office, by reason of the fact that it is unsurveyed land; but appellant has applied to have a survey made by the government.

Appellant contends that the court erred in admitting in evidence the quitclaim deed from A. Banta to respondent, of date February 23, 1906. This contention is based upon the assumption that appellant's entry upon the island was peaceable, and at the time this deed was made Banta neither

had the possession nor the right of possession, and therefore the deed could convey nothing and could not prove or tend to prove any of the issues in the case. A determination of this question involves the merits of this case. If Banta at the time he gave this deed had either the possession or the right of possession, the quitclaim deed was sufficient to convey such title as he possessed. That Banta had possession of the island at the time appellant made his entry thereon is not open to question and is not questioned. Such possession was good against every person, unless some one else showed a better right by connecting himself with the government title. The appellant claims he has done this by entering upon the land as a homesteader and applying to the government for a survey preliminary to making a proper application to purchase the land and obtain a patent therefor.

The fatal defect in appellant's position is that his entry upon the land was by trespass. This court, in line with many authorities, both federal and state, has held that a right to government land cannot be initiated in this manner. (*Nickals* v. *Winn*, 17 Nev. 188; *Brown* v. *Killabrew*, 21 Nev. 437; *Gonder* v. *Miller*, 21 Nev. 180.) See, also, the recent decision of this court in the case of *Nash* v. *McNamara*, 30 Nev. 114, in which numerous authorities upon this point are cited.

The judgment and order appealed from are affirmed.