277 P.3d 67 (2012)
A & W FARMS, William Guhlke and Alex Guhlke, Respondents,
v.
Raymond E. COOK, Jr. and Arlene Cook, husband and wife; and Adeline Johnson, Appellants.
Sunshine Lend Lease, Inc. a Nevada Corporation, Hard Rock Control, LLC, a West Indies Limited Liability Company; and Eldon Soresen, Defendants.
Nos. 29672-5-III, 29673-3-III.
Court of Appeals of Washington, Division 3.
May 22, 2012.
*69 Timothy W. Durkop, Attorney at Law, Spokane Valley, WA, Joseph Paul Delay, Delay Curran Thompson Pontarolo & Walker, Spokane, WA, for Appellant.
Shay S. Scott, Haglund Kelley Jones & Wilder LLP, Portland, OR, for Respondent.
BROWN, J.
¶ 1 In this consolidated appeal, Raymond E. Cook, Jr., and Arlene Cook, (collectively Mr. Cook) and Adeline Johnson assert the trial court erred in its supplemental proceedings order concluding they engaged in a fraudulent property transfer to avoid paying judgment creditor A & W Farms, a joint venture of William and Alex Guhlke. Mr. Cook contends (1) the court lacked subject matter jurisdiction, (2) the action was barred by the statute of limitations, and (3) sealed evidence was wrongly entered ex parte. Ms. Johnson contends (1) she was a vulnerable adult unable to participate in a fraudulent transfer, and (2) the court erred in quieting title in Mr. Cook's name when she was the purchaser of the property. We reject all contentions, and affirm.

BACKGROUND
¶ 2 Generally, in 2000 in Spokane County, A & W Farms successfully sued Sunshine Lend Lease, Inc., one of Mr. Cook's logging businesses.[1] Mr. Cook withheld logging payments beginning in 1997 that involved falsified *70 logging receipts. Mr. Cook did not challenge venue. In 2001, the court awarded A & W Farms $129,204 as an additional judgment for attorney fees for Mr. Cook's misconduct during prejudgment garnishment proceedings. He appealed the judgments and this court affirmed. See A & W Farms v. Sunshine Lend and Lease, Inc., 2003 WL 21513626, No. 20504-5-III (July 3, 2003 Wash.App.) (unpublished). On remand, the trial court acknowledged evidence of fraud in the 1997 logging transactions and further found Mr. Cook had offered altered trial documents, including three $10,000 checks written to Ms. Johnson. The court found Mr. Cook refused to cooperate, stonewalled, and hid documents. The court found both Mr. Cook and Ms. Johnson lacked credibility.
¶ 3 During the A & W Farms litigation, Mr. Cook purchased a 60-acre ranch in Stevens County, Washington, for $230,000 cash in April 1999. He paid $30,000 down and the remaining money was paid in two payments: $80,000 and $120,000. Mr. Cook paid $80,000 personally to the seller by cashier's check. He received the money as a personal check from Ms. Johnson and deposited it in his personal bank account. The $120,000 was paid at the April 1999 closing with a cashier's check made out to him from Ms. Johnson that he endorsed over to the seller. At closing, Mr. Cook put title in Ms. Johnson's name as the record owner instead of in his name. Ms. Johnson has never lived on the ranch, nor has she ever received any rent payments from Mr. Cook. Mr. Cook and his wife have lived on the ranch since 1999. Mr. Cook gave Ms. Johnson a promissory note for $200,000. The seller of the ranch testified Mr. Cook told him that he was arranging "financing" through Ms. Johnson for the purchase of the ranch. Report of Proceedings (Aug. 2, 2010) at 189.
¶ 4 The ranch was allegedly sold less than two years later in December 2001 for $100,000 to Hard Rock, LLC, a West Indies company without any money transfer to Ms. Johnson. Shortly thereafter, the property was transferred to Hard Rock's manager, Eldon Sorensen. Mr. Sorensen did not pay or exchange anything to Hard Rock for the property. Mr. Sorensen and Mr. Cook were acquaintances who had prior business dealings. Mr. Cook continued to live on the property the entire time.
¶ 5 In March 2002 supplemental proceedings, again without any Spokane County venue challenge, A & W Farms sought to set aside the April 1999 ranch purchase as a fraudulent transfer to Ms. Johnson, together with the other transfers under the Uniform Fraudulent Transfer Act (UFTA), chapter 19.40 RCW. At this time, Mr. Cook faced approximately $1 million in creditors. A & W Farms recorded lis pendens notice with the Stevens County recorder's office to prevent further fraudulent transfer of the property pending trial. The trial court noted that since the underlying judgment was entered on A & W Farms' fraud claim back in 2001, Mr. Cook had "evaded personal service approximately twenty times." Clerk's Papers (CP) at 1227 n. 7.
¶ 6 A & W Farms sought to depose Ms. Johnson about Mr. Cook's assets. Dr. Husky, Ms. Johnsons' family physician, opined Ms. Johnson was not capable of being truthful in an adversarial proceeding. He related she would become too nervous and anxious and be unable to reliably answer questions. Dr. Husky opined, however, that Ms. Johnson would be capable of safely answering questions in a supportive, nonadversarial environment. The trial court determined without appeal that Ms. Johnson was capable of participating in a deposition. Ms. Johnson appeared for her deposition and her testimony was used at trial.
¶ 7 Clark Ashworth, PhD evaluated Ms. Johnson at the request of her children. As a part of his October 2008 report, he discussed financial transactions, indicating she understood all of the financial transactions discussed. A primary care physician for Ms. Johnson reported she was able to manage her finances.
¶ 8 A & W Farms attempted discovery, but had extreme difficulty in serving Mr. Cook. In July 2008, A & W Farms finally succeeded in serving him with an amended subpoena duces tecum and document request, which required him to appear on July 29 for a debtor examination; he failed to appear. In August 2008, A & W Farms moved for Mr. *71 Cook to appear at a show cause hearing and respond to their request for a finding of contempt and a bench warrant. In September 2008, the court ordered Mr. Cook to appear on October 9 for examination regarding his real and personal property; he failed to appear. In March 2009, A & W Farms duly moved for a bench warrant, sanctions, and supplemental examination. In May 2009, the court issued an order to show cause why a bench warrant should not be issued. Mr. Cook finally appeared through counsel.
¶ 9 At the 2010 trial, A & W Farms asked the court to unwind the transfers that left the ranch out of Mr. Cook's name. Ms. Johnson's son, Kenneth Johansson, offered otherwise unsupported claims his mother began suffering from mental deficiencies and depression after a stroke in 1994 or 1995, and her condition worsened with later mini-strokes. The court noted Mr. Johansson was a potentially biased witness because he could benefit if Ms. Johnson were to receive money from the execution sale of the ranch.
¶ 10 The court found Ms. Johnson participated in the transactions to assist Mr. Cook with severe creditor problems and she later participated in covering up the transactions when they were investigated. The court noted Ms. Johnson claimed the property was an investment, but she never attempted to obtain rent from Mr. Cook for living on the property, and the property was sold for less than one-half of the purchase price only two years after Mr. Cook obtained it without payment evidence.
¶ 11 The court concluded the initial transaction of deeding the ranch to Ms. Johnson, instead of Mr. Cook's name, was a fraudulent transaction. The court considered the issues regarding the transfers to Hard Rock and to Mr. Sorensen moot. The court quieted title to the ranch in Mr. Cook's name, exposing it to A & W Farms. Ms. Johnson unsuccessfully requested reconsideration, arguing she was a vulnerable adult at the time of the purchase of the ranch and later transfers. Ms. Johnson and Mr. Cook appealed separately.

ANALYSISMr. Cook's Appeal

A. Jurisdiction
¶ 12 The issue is whether the trial court had subject matter jurisdiction over A & W Farms' fraudulent transfer complaint. Mr. Cook contends the matter should have been brought in the county where the property is located.
¶ 13 Determining subject matter jurisdiction is a question of law we review de novo. In re Marriage of Kastanas, 78 Wash. App. 193, 197, 896 P.2d 726 (1995). Subject matter jurisdiction is the authority to hear and determine the class of action to which the case belongs. Spokane Airports v. RMA, Inc., 149 Wash.App. 930, 943, 206 P.3d 364 (2009). Generally, RCW 4.12.010 provides for trial of real property disputes in the county where the real property is situated. "RCW 4.12.010 is jurisdictional in nature." Wash. State Bank v. Medalia Healthcare LLC, 96 Wash.App. 547, 554, 984 P.2d 1041 (1999).
¶ 14 When interpreting a statute, our objective is to determine the legislature's intent. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). To determine that intent, we first look to the language of the statute. Id. If the plain language of the statute is clear and unambiguous, we must give effect to the language as an expression of legislative intent. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002). Here, the statute uses the term "commenced" meaning the initiation of the action. The action was commenced in 2000 in Spokane County. RCW 4.12.010 applies to the commencement of original quiet title actions and not supplemental proceedings.
¶ 15 For purposes of executing on the assets of a judgment debtor, the legislature specifically granted Washington courts jurisdiction to adjudicate "title to property" under RCW 6.32.270. This statute provides, "[I]n any supplemental proceeding, where it appears to the court that a judgment debtor may have an interest in or title to any real property . . . the court may, . . . determine such property to be wholly or in part the *72 property of the judgment debtor." RCW 6.32.270. And, RCW 6.32.240, entitled "Proceedings, before whom instituted," explicitly grants the trial court's jurisdiction over "[s]pecial proceedings under this chapter [which] may be instituted and prosecuted before the superior or district court of the county in which the judgment was entered or any judge thereof.'" (Emphasis added.) Thus, supplemental proceedings under RCW 6.32.270 are special in character, and the trial court has jurisdiction by statute under the supplemental jurisdiction title. "[T]he examination of a judgment debtor is not an independent action, but is ancillary to and a continuation of the original action." Molander v. Raugust-Mathwig, Inc., 44 Wash.App. 53, 68, 722 P.2d 103 (1986) (citing State ex. rel. McDowall v. King Cnty. Superior Court, 152 Wash. 323, 277 P. 850 (1929)).
¶ 16 In essence, Mr. Cook challenges venue, arguing the matter should have been brought in Stevens County instead of Spokane County. But, a challenge to a court's venue, unlike its jurisdiction, is waived if not raised below. See State v. Scott, 110 Wash.2d 682, 688, 757 P.2d 492 (1988) (because it is not constitutional, a failure of proof of venue is not an error of constitutional magnitude that a party may raise for the first time on appeal).
¶ 17 In sum, RCW 6.32.270 in combination with RCW 6.32.240 allows a superior court to adjudicate title to real property in a supplemental proceeding against a judgment debtor and other persons joined "claiming adversely" to the debtor, and the trial court in such a situation is not required to resort to RCW 4.12.010 for its jurisdiction. The Spokane County Superior Court properly exercised jurisdiction.

B. Timeliness
¶ 18 The issue is whether A & W Farms' claim was time barred. Mr. Cook contends A & W Farms commenced its action over four years from the judgment date. Mr. Cook unsuccessfully raised this issue in summary judgment. We review issues raised in summary judgment proceedings de novo. Lybbert v. Grant Cnty., 141 Wash.2d 29, 34, 1 P.3d 1124 (2000).
¶ 19 The statute of limitations for the UFTA states, "A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought: (a) Under RCW 19.40.041(a)(1), within four years after the transfer was made or the obligation was incurred." RCW 19.40.091(a). A & W Farms filed its claim to set aside fraudulent transfers in a March 2002 complaint. The first fraudulent transfer occurred in April 1999. The 2002 filing of the fraudulent transfer complaint was well within four years of the real property transfers. Mr. Cook points to a March 16, 2007 filing as the initiation date. The March filing, however, is a court order for the deposition of Mr. Cook's son. The facts show Mr. Cook was properly served in 2002 and then spent years dodging notice and hindering discovery. Given this record, A & W Farms' claim is not barred by the statute of limitations.

C. Record Sealing
¶ 20 Mr. Cook's final issue, raised for the first time on appeal, is whether the trial court erred by violating GR 15(c) in entering an ex parte order sealing court records.
¶ 21 GR 15(c)(1) partly states: "In a civil case, the court or any party may request a hearing to seal or redact the court records. . . . Reasonable notice of a hearing to seal must be given to all parties in the case." An issue involving compliance with a procedural rule rather than a constitutional issue may not be raised for the first time on appeal. State v. Gentry, 125 Wash.2d 570, 616, 888 P.2d 1105 (1995).
¶ 22 Nevertheless, on August 17, 2009, A & W Farms filed a motion to subpoena bank records without notice to Mr. Cook. A & W Farms attempted to garnish assets to collect on its judgment. Evidence here shows Mr. Cook was very evasive and refused to satisfy the judgment. A & W Farms attempted to obtain information about bank accounts with notice to Mr. Cook, but soon after the funds would be removed from the accounts in question. Mr. Cook's prior actions justified the sealing. If Mr. Cook disagreed, his proper recourse would be a *73 motion to unseal the record pursuant to GR 15(e). Mr. Cook fails to show how the court's sealing of financial records to permit garnishment has any bearing on the fraudulent transfer issue raised in this appeal. Given all, Mr. Cook's GR 15 argument is untimely, made before the wrong court, and is unpersuasive.

ANALYSISMs. Johnson's Appeal

A. Vulnerable Adult
¶ 23 The issue is whether Ms. Johnson was a vulnerable adult in 1999 when the ranch was put in her name. She contends she did not possess the mental ability to form the intent to defraud A & W Farms.
¶ 24 In its written opinion, the trial court found Ms. Johnson "willingly participated" in the fraudulent transfers and that she testified "less than credibly regarding these transactions." CP at 1234. We review a lower court's findings for substantial evidence and whether those findings support the court's conclusions of law and the judgment. Wenatchee Sportsmen Ass'n v. Chelan Cnty., 141 Wash.2d 169, 176, 4 P.3d 123 (2000).
¶ 25 RCW 74.34.020(17)(a) partly provides "`Vulnerable adult' includes a person: (a) sixty years of age or older who has the functional, mental, or physical inability to care for himself or herself." Whether an individual is a vulnerable adult must be established by clear, cogent, and convincing evidence. Endicott v. Saul, 142 Wash.App. 899, 910, 176 P.3d 560 (2008). Ms. Johnson must prove she was vulnerable at the time of the questioned transaction. Id. 920-21, 176 P.3d 560.
¶ 26 In Endicott, the court invalidated a transaction based mostly on the testimony of neighbors. Id. at 912-13, 176 P.3d 560. The testimony showed Ms. Endicott would drop lit cigarettes on the floor without noticing, was unable to make her own food, did not recognize people she had known for years, and persisted in going through dumpsters even after being warned they contained used needles. Id. at 913, 176 P.3d 560. Ms. Endicott was found wandering around in a ditch holding a toothbrush in 2003. Id. at 912, 176 P.3d 560. Given all, the court determined she was a vulnerable adult. Id. at 921, 176 P.3d 560. Based on its findings, the court invalidated one of her property transfers and concluded it was "undisputed" she was unable to care for herself or her finances. Id.
¶ 27 Here, the trial court agreed Ms. Johnson met the definition of a vulnerable adult at the time of trial in August 2010, but decided she did not meet that standard in 1999. Ms. Johnson has been evaluated by several doctors in order to determine her mental status at the request of her children. Not a single report claims Ms. Johnson was vulnerable or unable to manage her own finances prior to 2008. The record shows she was able to manage her own finances as late as 2008, as determined by Clark Ashworth, PhD and her primary care physician. Dr. Husky opined that Ms. Johnson would suffer anxiety if deposed in the supplemental proceeding, but he concluded she would be able to answer questions in a supportive environment. Ms. Johnson never appealed that ruling, and she appeared for her garnishment deposition in March 2002.
¶ 28 While Mr. Johansson testified to mini-strokes, depression, and memory issues, no medical evidence substantiated his claims. And, the trial court found Mr. Johansson to be a potentially interested party. We do not decide credibility issues. It was not until 2008 that Ms. Johnson had competency testing regarding cognitive deficits. Even then, the report notes regarding various financial transactions, "[s]he seems to understand these well." Ex. D202 at 3. And another medical report from 2008 notes, Ms. Johnson "is able to manage her own funds." CP at 823. We are not in a position to re-evaluate the substantial evidence before the trial court; Ms. Johnson did not prove with clear, cogent, and convincing evidence that she was a vulnerable adult in 1999 when she advanced funds to Mr. Cook to buy the ranch. The trial court's finding that she willingly participated in the fraudulent transfers is supported by substantial evidence.

B. Quiet Title in Mr. Cook
¶ 29 The next issue is whether the trial court erred in quieting title in the Stevens *74 County real property solely in Mr. Cook's name. Ms. Johnson contends she is entitled to her proportional interest to the extent of her initial $200,000 investment.
¶ 30 Under the UFTA, Ms. Johnson is allowed to recover her proportional interest in the property if she was a good faith transferee. "[A] non-good-faith transferee is liable for the full value of the asset, regardless of consideration given." Thompson v. Hanson, 168 Wash.2d 738, 752, 239 P.3d 537 (2010). As discussed above, Ms. Johnson was not a good faith transferee. Once Ms. Johnson loaned the money to Mr. Cook to buy the ranch, it belonged to him, notwithstanding the fraudulent nature of how title was recorded. The trial court did not err in quieting title in Mr. Cook.
¶ 31 Affirmed.
WE CONCUR: KORSMO, C.J., and KULIK, J.
NOTES
[1] There appears to be some confusion in the record regarding the correct name for this corporation. For purposes of this opinion, we will refer to the corporation as Sunshine Lend Lease, Inc.