[No. 26528. Department One. May 6, 1937.]

MINNIE RYCKMAN, *Respondent,* v. JOHN P. JOHNSON *et al., Appellants.*[1]

Clark & Grady, for appellants.

Harry L. Olson, Snively & Bounds, and John Gavin, for respondent.

STEINERT, C. J.—Plaintiff, a judgment creditor, brought this action against her judgment debtors and others, as defendants, to have certain transactions occurring between defendants declared fraudulent and void as to plaintiff, and to have certain deeds given in pursuance and culmination of such transactions and resulting in the transfer of record title to real estate set aside, and, finally, to have the lands described in the deeds adjudged subject to the lien of plaintiff's judgment and the property sold in satisfaction thereof.

[1] Reported in 67 P. (2d) 927.

Trial before the court, without a jury, resulted in a judgment and decree awarding plaintiff the relief sought. Defendants have appealed.

This action is the outgrowth and consequence of previous litigation between respondent and appellants John P. Johnson and Bertha B. Johnson, wherein respondent ultimately obtained judgment against those appellants in the sum of $3,904.50 for damages sustained by reason of false and fraudulent representations made by the same appellants to respondent in the exchange and purchase of real estate. The details of that litigation will be found in *Ryckman v. Johnson,* 161 Wash. 568, 297 Pac. 206, and *Ryckman v. Johnson,* 177 Wash. 498, 32 P. (2d) 116. In the case last mentioned, respondent's judgment was affirmed by this court on May 7, 1934. Thereafter, execution was issued and returned wholly unsatisfied. Respondent then brought this action seeking satisfaction of her judgment.

On, and for some time prior to, the date of entry of the judgment just referred to, appellants John P. Johnson and Bertha B. Johnson, husband and wife, were the record owners of two tracts of land lying, respectively, in Yakima reservation irrigation district and Union Gap irrigation district, in Yakima county. The tract of land lying in Yakima reservation irrigation district will hereinafter be referred to as tract one, and the tract lying in Union Gap irrigation district will be referred to as tract two.

Tract one figured in the earlier litigation. It consists of forty acres and at the time of the trial was, according to the stipulation of the parties, worth five thousand dollars. Tract two consists of ten acres, and, according to the stipulation, was worth two thousand dollars. At the same time, one Karl Erickson held a

contract to purchase tract two from John P. Johnson and wife.

The Johnsons were unable to pay the judgment which respondent had obtained against them and, as their counsel say, realized that the two tracts of land above described would eventually be sold on execution.

In the meantime, irrigation assessments, levied on each tract in 1932, had become delinquent. Under the procedure prescribed in such cases, the tracts were subsequently sold to the respective irrigation districts, to whom certificates of sale, subject to redemption within one year, were issued in 1934. Tract one was bought in for $4.16 and tract two for $32.16. During this time, the appeal of John P. Johnson and wife in the second of the two former cases was pending in this court, the remittitur therein going down in July, 1934.

By reason of the situation thus presented, John P. Johnson and his wife were in this dilemma: If they did not redeem the lands, their title to them would shortly be extinguished by deeds to the districts, and if they did redeem, they would in all probability sustain a similar loss as the result of sale on execution under respondent's judgment. In this predicament, John P. Johnson consulted an attorney with the view of finding some solution of the difficulty. The attorney advised him that his situation was precarious, and that, in all likelihood, he would be caught upon one horn or the other of the dilemma. Johnson then inquired whether one of his sons could legally acquire title from the districts, and was advised that this could be done, provided the son did so in his own behalf and with his own money. As stated by the trial court, that advice was correct and proper.

Johnson then contacted each of his two sons, appel-

lants Daniel T. Johnson and Richard E. Johnson, one of whom lived in Tacoma and the other at Gig Harbor. After further conferences and some correspondence between the attorney and John P. Johnson, and after certain negotiations between the attorney and the representatives of the two districts, a plan was formulated under which one of the sons subsequently took an assignment of his father's right of redemption and later received from one of the districts a deed to one of the tracts of land, and the other son took a deed to the other tract from the other district after the period of redemption had expired. In each instance, however, the amount paid was nominal in comparison with the agreed value of the lands.

Despite the arrangement thus made and followed, John P. Johnson, the father, continued to deal with Erickson, who held the contract to purchase one of the tracts. There is in the record much of the correspondence that passed between John P. Johnson and Erickson. It is significant that the earlier letters from Johnson to Erickson were written in longhand and made no mention of either of the sons, although the arrangement with them had at that time already been made, while subsequent letters of John P. Johnson were typewritten and contained repeated references to one of the sons and his asserted rights in one of the tracts.

It appears from the record that John P. Johnson had been told that he should not be writing letters to Erickson, yet he continued to do so. However, the form and contents of the more recent letters written by him provoke and justify the inference that they were inspired by the desire to bolster his present contention. There is much else in the evidence, viewed in the light of attendant circumstances, to warrant the conclusion drawn by the court, as shown in its oral decision at

the conclusion of the trial, that the money claimed to have been paid by the sons was actually furnished by the father.

It is not denied that the sons were thoroughly familiar with the conditions obtaining with respect to respondent's judgment, and the proof is well-nigh conclusive that they had become interested in their father's affairs solely on that account. It also appears that neither of the sons ever went upon the lands during the period of the various transactions, and that all matters pertaining to the payment of taxes and insurance have been handled continuously by the father.

 The three assignments of error herein present two questions. Appellants contend, first, that the court erred in denying their motion for change of venue made shortly after the commencement of the action. The motion was rested upon the ground that, although appellants were all residents of the state of Washington, none of them resided in Yakima county, wherein the action was brought. The question presented by this assignment is whether the action is local or transitory.

Rem. Rev. Stat., § 204 [P. C. § 8541], provides that actions for the following causes, among others, shall be commenced in the county in which the *subject of the action,* or some part thereof, is situated:

"1. For the recovery of, for the possession of, for the partition of, for the foreclosure of a mortgage on, *or for the determination of all questions affecting the title* or for any injuries to real property; . . ." (Italics ours.)

The term "subject of the action," as used in this section of the statute, means that which will be directly affected if the relief sought by the plaintiff be granted. In this case, the *object* of the action is to

have the transactions above described declared fraudulent and to have the title to the land adjudged to be in John P. Johnson and wife or held for their benefit, so as to subject it to the lien of respondent's judgment. But the thing affected by the decree, or the subject of the action, is the land itself, according to whether John P. Johnson and wife are, or are not, held to be the owners thereof.

Considering, next, the kinds of action which by Rem. Rev. Stat., § 204 [P. C. § 8541], are local in nature, we note that they include, generally, all causes of action which affect real estate or title thereto.

Actions to set aside fraudulent conveyances for the purpose of subjecting the property to the claims of creditors certainly affect the title to such property and clearly fall within the classification of causes "for the determination of all questions affecting the title." The weight of authority, we think, clearly supports that view. *Harris v. Smith,* 133 Ark. 250, 202 S. W. 244; *Minor v. Sumner,* 80 Ind. App. 269, 140 N. E. 580; *Williams v. Davenport,* 181 Ky. 496, 205 S. W. 551; *Chapin v. Dodds,* 104 Mich. 232, 62 N. W. 351; *Hunt v. Dean,* 91 Minn. 96, 97 N. W. 574; *Heinecke v. Scott,* 95 Mont. 200, 26 P. (2d) 167; *Iron Nat. Bank v. Dolge,* 61 N. Y. Supp. 680, 46 App. Div. 327; *Wofford-Fain & Co. v. Hampton,* 173 N. C. 686, 92 S. E. 612; *Acetylene Co. v. Coblentz,* 86 Ohio St. 199, 99 N. E. 302, Ann Cas. 1913D, 660; *Ott v. Cheney,* 63 S. D. 524, 261 N. W. 204; 67 C. J. 62, § 97 c; 12 R. C. L. 649, § 156; 27 R. C. L. 792, 793, § 14.

Appellants cite and rely upon certain of our decisions which hold that actions wherein it is sought to establish and enforce a trust, or where the court in the exercise of its equity powers acts to compel parties before it to do a particular thing, or where, in the defendant's answer, title to real property is

brought into issue only incidentally, are transitory, inasmuch as the decree acts only *in personam.* The principles enunciated in those cases are well settled, in this state at least, but they do not meet this case, because, as already stated, the subject of the action involves, and the object of the action is directed toward, the land and the title thereto.

"It is the policy of our law that all transactions affecting the title to real estate shall be matters of record in the county where such real estate is situated, so that any one concerned therewith may be informed as to the condition of its title by an examination of the public records in such county." *Seymour v. LaFurgey,* 47 Wash. 450, 92 Pac. 267.

The subject of this action being situated in Yakima county, and its character being within the designation of the statute as we construe it, the action is local. The motion for change of venue was properly denied.

The other assignments of error challenge the holding of the court that the transactions and proceedings hereinbefore narrated were fraudulent, and that the property was held in trust for John P. Johnson and Bertha B. Johnson, subject to the lien of respondent's judgment.

All three of the appellant husbands were in court and testified. Upon every fact but one, the conclusion was well-nigh irresistible that the transactions, considered in their entirety, were conceived and consummated with the fraudulent intent to hinder, delay and prevent respondent from satisfying her judgment out of the property involved, by putting it beyond the apparent ownership of John P. Johnson and Bertha B. Johnson. The one fact concerning which there could be any difference of opinion was whether the money with which the lands were purchased from the irrigation districts was supplied by Johnson the father, or by his two sons. The court had the peculiar ad-

vantage of seeing the witnesses, observing their demeanor, weighing their testimony, and considering it in the light of all the evidence. In his oral decision, the trial judge summed up the evidence and finally said: "I don't believe the boys ever put this money up themselves." It appears to us that the evidence, even as reflected by the cold record, greatly preponderates to that conclusion. In any event, we are wholly unable to say that it does not.

The judgment is affirmed.

ROBINSON, MAIN, BLAKE, and GERAGHTY, JJ., concur.